397 So.2d 1287 (1981)
STATE of Louisiana
v.
Rowan WILLIAMS.
No. 67478.
Supreme Court of Louisiana.
April 6, 1981.
Rehearing Denied May 16, 1981.
*1288 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James D. Caldwell, Dist. Atty., John D. Crigler, Asst. Dist. Atty., for plaintiff-appellee.
Raymond L. Cannon, Tallulah, for defendant-appellant.
DENNIS, Justice.
Defendant, Rowan Williams, was indicted by the Tensas Parish Grand Jury for the crime of armed robbery, in violation of La. R.S. 14:64. He was found guilty after trial by jury and sentenced to serve seventy years at hard labor without benefit of parole, probation or suspension of sentence. He has appealed his conviction and sentence to this Court, urging eight of the twelve assignments of error filed below. While we affirm the conviction, we find the sentence *1289 to be excessive and accordingly remand for resentencing consistent with the views set forth herein.
On June 3, 1979, four armed men wearing stocking masks entered a residence near Waterproof, Louisiana, bound the children they found alone in the house, and began to search for valuables. One of the intruders shot and killed the children's father when he and his wife returned from a shopping trip. Some of the men fled in the victim's automobile, taking with them his wallet, several guns, and an old coin collection.
Confessions obtained from three men subsequently arrested in connection with the crime implicated the defendant as being a "look-out" in the robbery and a warrant was issued for his arrest. On July 6, 1979 the defendant was arrested in California and returned to Louisiana. He was tried as a principal in the crime of armed robbery.
ASSIGNMENT OF ERROR NO. 1
Defendant asserts that the trial court erred in denying his motion to change venue, and in denying his motion for a new trial on the same ground.
Defendant contends that the district court erred in denying his motion to change venue and his motion for a new trial on the same ground because his sentencing judge remarked in her reasons for sentence that citizens of the parish lived in terror because of the cases of arson and robbery which occurred before the arrest of the defendant and several others. The sentencing judge, however, was not the judge who presided over the change of venue hearing. Furthermore, the remarks of the sentencing judge are not based upon the evidence introduced at that hearing or at any other stage of this case. Upon a review of the record evidence in this case and considering this court's prior disposition of a similar issue in State v. Williams, 385 So.2d 214 (La.1980), a co-defendant's case arising from the same offense, we cannot say that the denials of defendant's motions amount to reversible error.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant argues that the trial court erred in denying his motion for a preliminary examination. He contends that the ruling deprived him of protection from the shifting testimony of alibi witnesses who surprised him at trial by expressing uncertainty regarding the time periods defendant was with them the night the armed robbery took place. This court has implicitly held, however, that this value in the preliminary examination is not within the scope of the guaranteed constitutional right. State v. Sterling, 376 So.2d 103 (La.1979).[1]
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 8
This assignment of error concerns an alleged prohibited judicial comment on the evidence which occurred as defense attempted to introduce an exhibit into evidence.
While the defendant was on the stand he explained that his presence in California at the time of his arrest was connected to his impending attendance at San Francisco City College on a football scholarship. Defendant further testified that because of his athletic scholarship he would have no inclination to jeopardize his future by participation in a crime. The state questioned the existence of the scholarship on cross-examination. On redirect, defense counsel sought to introduce a letter addressed to the defendant from G. Rush at San Francisco City College entitled "Financial Aid Acknowledgement." Responding to a state objection on grounds of relevancy, defense counsel explained that it was offered to corroborate defendant's testimony that there was a coach named Rush and a San Francisco City College. At that point the judge made the following observation:
*1290 "THE COURT: Mr. Cannon, the Court will let it in but it is not proof of any grant or scholarship. This is proof that the man is trying to get a scholarship service or a grant in aid which any student can do whether he is a good football player or whether he's just a good student or whether he's just a mediocre student. Any student in any class can apply for a grant from the Federal Government or for financial aid. That even includes people that I'm right close to."
The jury was removed and pursuant to defense counsel's objection, the judge agreed to withdraw the comment. When the jurors returned, they were admonished to disregard the remarks and reminded that they were the sole judge of the facts in the case. The defendant argues that the admonishment was insufficient and that this comment upon the relevancy of the evidence mandates reversal of the conviction pursuant to La.C.Cr.P. article 772, which provides:
The judge in the presence of the jury shall not comment upon the facts of the case either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The trial judge's comments do not come within the prohibition of this article as interpreted by the jurisprudence. This court has consistently held that reasons given by the trial judge in the jury's presence for his rulings on objections, for admitting or excluding evidence, or explaining the purpose for which evidence is offered or admitted are not objectionable as comments or expressions of an opinion provided they are not unfair or prejudicial to the accused. State v. Quincy, 363 So.2d 647 (La.1978); State v. Schouest, 351 So.2d 462 (La.1977); State v. Taylor, 347 So.2d 172 (La.1977). In the present case, defense counsel offered the letter as evidence tending to show the existence of a coach Rush at San Francisco City College, not as conclusive proof of defendant's athletic scholarship. The trial judge's remarks merely explained the limited purpose for which the evidence was offered and admitted.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 10
Defendant complains that he was deprived of his right to a full voir dire examination of a prospective juror. During voir dire the defense attorney was not permitted to ask one venireman his opinion of defendant's guilt or innocence, although he had been permitted free inquiry into this subject with the other prospective jurors. However, the venireman gave answers to other questions which, in the context of this well publicized crime, clearly indicated his bias in favor of the prosecution.[2] Defense counsel subsequently challenged the prospective juror peremptorily.
Parties have a right to question jurors on their examination not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge and it is error for the court to exclude questions which are pertinent for either purpose. State v. Hills, 241 La. 345, 129 So.2d 12 (1961). Accordingly, *1291 the trial judge erred in forbidding defense counsel to put to the venireman the pertinent question of his opinion with reference to the accused's guilt or innocence. However, in this case, the defendant was not deprived of his right to a full voir dire because he received sufficient information through the prospective juror's answers to other questions, to intelligently exercise defendant's right of peremptory challenge.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 2
Defendant argues that the trial court erred by denying his motion to suppress confessions and inculpatory statements of a co-defendant and the evidence seized pursuant to a search warrant issued on the basis of those confessions.
The confessions and inculpatory statements, and the issuance of a search warrant based on them were upheld as valid by this court in State v. Williams, supra. For the reasons assigned in that case, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 12
Defendant argues that prejudicial error was committed by the state in closing argument when the district attorney made the following statement:
"The State did not know what the defendant's alibi was. Indeed we did not have the right to find out until he took the stand."
Defense counsel asked that the jury be removed and then objected to the statement, pointing out that a list of alibi witnesses was delivered to the assistant district attorney. On the jury's return the judge gave instructions correcting the state's inaccurate remark and the defendant did not object to these instructions.
La.C.Cr.P. article 771 requires the court to admonish the jury upon request of either the defendant or the state when an irrelevant or immaterial remark is made which may create prejudice, and that remark is not within the scope of the mistrial provisions of La.C.Cr.P. article 770. Since the objectionable remark was clearly not within the scope of Article 770, the admonishment was sufficient to rectify any prejudice which the remark may have caused.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 6
In this assignment defendant argues that the sentence imposed is excessive. For the reasons hereinafter assigned, we conclude that his argument is meritorious and the sentence must be set aside.
The excessiveness of a sentence is a question of law reviewable under the appellate jurisdiction of this court. La.Const. Art. 1, § 20; Art. 5, § 5(C); State v. Sepulvado, 367 So.2d 762 (La.1979). The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on appellate review of his conviction. State v. Spencer, 374 So.2d 1195 (La.1979); State v. Gist, 369 So.2d 1339 (La.1979); State v. Sepulvado, supra.
Louisiana Code of Criminal Procedure Article 894.1 sets forth criteria for a sentencing judge to use in determining whether (1) to suspend a defendant's sentence or place him on probation, (2) to impose a sentence of imprisonment, and (3) if imprisonment is the appropriate disposition, whether the sentence should be closer to the maximum rather than to the minimum statutory range of sentence. State v. Sepulvado, supra, 367 So.2d at 768. The same criteria, which are similar to those evolved by courts in other American jurisdictions with a constitutional or statutory duty to review excessiveness, are appropriate for measuring whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives. State v. Sepulvado, supra, 367 So.2d at 769.
La.C.Cr.P. art. 894.1(C) provides that the trial court shall state for the record the considerations taken into account and the factual bases therefor in imposing sentence. This in most cases is crucial to this court when called upon to exercise its constitutional function to review a sentence complained *1292 of as excessive. State v. Sepulvado, supra, 367 So.2d at 769. Without the trial court's articulation of the factual basis of each ground which influenced its disposition, the sentence may appear to have been arbitrary or excessive, unless there is evidence elsewhere of record which clearly illumines the sentencing choice.
In sentencing Rowan Williams to seventy years at hard labor without benefit of parole, probation or suspension of sentence, the trial court relied on as circumstances indicating that a sentence close to the statutory maximum was appropriate (1) its belief that Williams' past conduct as a juvenile indicated that he might commit another crime if he were ever released, (2) its belief that the defendant's criminal conduct caused serious harm, (3) its view that the defendant contemplated his conduct would cause or threaten serious harm, (4) its view that he did not act under strong provocation, (5) its view that there were no grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense, (6) its finding that the victim did not induce or facilitate the commission of the crime, (7) its assumption that the defendant's criminal conduct was the result of circumstances likely to recur, (8) its belief that the defendant's character or attitudes indicate that he is likely to commit another crime, (9) its belief that he would not respond affirmatively to probation, (10) its assumption that the defendant was in need of correctional treatment, (11) its view that any lesser sentence would deprecate the seriousness of the offense. The trial court also recognized that the defendant's age at sentencing was twenty years in imposing a sentence of seventy years without parole. In view of all of the reasons given for sentencing it is evident that the trial court imposed a sentence calculated to incarcerate Williams for life.
The sentence is excessive based on the present record because (1) there is no factual basis for many of the sentencing grounds stated in the trial court's sentencing reasons or contained elsewhere in the record, (2) the defendant's juvenile conviction should not have been considered because it was vacated and annulled for lack of sufficient evidence, and (3) the record evidence and sentencing reasons do not support constitutionally a sentence in excess of fifteen years.
The defendant, Rowan Williams, at the time of the offense in question on June 3, 1979, was an eighteen year old black first offender. He had lived for about five years with his grandparents in Waterproof, Louisiana while his parents resided in New York. At the time of the crime, however, defendant was residing with his father who had returned to Waterproof. Defendant was influenced greatly by his father, a leader of a militant political organization. Defendant's father aided, abetted and encouraged the robbery but apparently did not go to the crime scene himself. Juvenile court records filed in this case indicate that in 1975 defendant was in special education and his I.Q. scores ranged from 70 to 74. His grandparents reported that he was easily led by his peers. Three of his co-defendants, who testified for the prosecution, stated that defendant refused to enter the victim's house during the robbery, that he participated only as a lookout, that he left his lookout post and did not warn them of the victim's return, and that he had to be brought back by his cohorts during the offense. However, defendant was armed during the episode and accepted $100 of the robbery proceeds. The record evidence does not dispute this description of defendant's relatively marginal participation. Although defendant's father was sentenced to fifty years and two other co-defendants were sentenced to twenty-five years each for their much deeper involvement in the same offense, Rowan Williams was sentenced to seventy years at hard labor without probation, parole or suspension of sentence.[3]
The trial court did not have discretion to withhold a sentence of imprisonment or place defendant on probation. The penalty *1293 for armed robbery at the time of the offense in question was imprisonment at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence. La.R.S. 14:64. Accordingly, the trial court was required to bypass the first step of the sentencing procedure contemplated by La.C.Cr.P. art. 894.1, i. e., a determination of whether to suspend a defendant's sentence or place him on probation.
The trial court's reasons for sentence and the evidence of record are devoid of any substantial factual basis for many of the grounds given as justification for a sentence of seventy years without parole. Although the victim of the armed robbery was killed during the offense, there is no indication that defendant Rowan Williams contemplated or personally contributed to this consequence. The evidence indicates that he did not participate except as a lookout stationed outside the house and withdrew or attempted to withdraw even from this role during the offense. Although failing to establish a defense, there is indication that defendant, a youth of below average intellect, acted under the domination of his militant father. We find no basis in the record for the trial court's conclusion that the circumstances producing defendant's crime are likely to recur and that his criminal disposition is such that it cannot be corrected by a shorter prison sentence.
A lesser sentence than seventy years at hard labor without parole would not deprecate the seriousness of the defendant's crime. His older codefendants who participated more actively in the crime received substantially lesser sentences, ranging from twenty-five to fifty years. The trial court did not find that these sentences deprecated the seriousness of the crime. Incongruously, the only reason given for defendant's longer sentence of seventy years was his youth, apparently on the theory that he should be given a sentence of greater length to keep him in prison for life. Since there was no evidence indicating that defendant is beyond all hope of rehabilitation or that he is an extremely dangerous offender, a sentence of near maximum length was not justifiable on these grounds. Although armed robbery is a very serious crime which should not be deprecated by too light a sentence, particularly when a human life is taken during the offense, the legislature has established a range of punishment from five to ninety-nine years without parole. In view of the mitigating circumstances and lack of articulable criteria to justify the sentencing disparity between defendant and offenders sentenced in the same court and in different courts, we conclude that a sentence of seventy years was not necessary to avoid deprecation of the seriousness of the offense.[4]
In 1975 the same judge who sentenced defendant in this case acted as a juvenile judge in declaring him to be a delinquent child after finding that he participated in a burglary of a service station. He appealed and the court of appeal annulled and vacated the adjudication, finding that the evidence was not constitutionally sufficient proof beyond a reasonable doubt of Williams' participation in a burglary planned and perpetrated by another juvenile. State in Interest of Williams, 325 So.2d 854 (La. App. 2d Cir. 1976).
The record in this case makes evident that the sentencing judge gave specific consideration and weight to the defendant's juvenile adjudication although it has been annulled and vacated. In fact, the sentencing *1294 judge indicated at the sentencing proceeding that she considered the court of appeal's decision to have been erroneous. Yet it is clear that the juvenile adjudication had been annulled and vacated as wholly unconstitutional under In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We deal here, therefore, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part on a constitutionally invalid previous conviction. Accordingly, erosion of the Winship principle can be prevented here only by setting aside the sentence and remanding this case to the trial court for resentencing without consideration of the annulled and vacated juvenile adjudication. Cf., United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).
Furthermore, it is clear that a sentence of seventy years' imprisonment at hard labor without parole is constitutionally excessive based on the evidence in this case. A punishment is "excessive" and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; and (2) is grossly out of proportion to the severity of the crime. A punishment may fail this test on either ground. Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Defendant's punishment in the present case fails on both grounds. The incarceration of an eighteen year old offender for a period of seventy years without any substantial evidence that he is an extremely dangerous or irremediably habitual criminal, while granting his older more culpable codefendants measurably shorter sentences, clearly makes no contribution to acceptable goals of punishment. Although an armed robbery involving the death of a victim is an extremely serious crime, the punishment here is grossly out of proportion to the severity of defendant's personal criminal conduct. Insofar as the record discloses he participated only as a lookout, he withdrew or attempted to withdraw even from this role, he did not warn his codefendants of the victim's return, and he did not enter the victim's house or take part in the killing. Considering the defendant's age, his lack of previous adult or juvenile convictions, his apparent reluctance to participate in the crime, and the particular pressures brought to bear on him by his father, who has now been sentenced to prison for fifty years, we conclude that a sentence of more than fifteen years at hard labor without parole, probation or suspension of sentence in this case would be constitutionally excessive.
For the reasons assigned, the defendant's conviction is affirmed, but his sentence is reversed, and the case is remanded for the imposition of a new sentence consistent with this opinion.
AFFIRMED; REMANDED FOR RESENTENCING.
CALOGERO, J., dissents from affirmance of conviction believing there is reversible error in Assignment of Error # 1, but considering the majority's affirmance of the conviction, concurs in the remand for resentencing.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
BLANCHE, J., concurs in part and dissents in part for reasons assigned.
WATSON, J., concurs in the result.
LEMMON, J., concurs and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the affirmance of defendant's conviction and agree that a sentence of seventy years without benefit of parole, probation or suspension of sentence is excessive in this case. Hence, I would vacate the sentence. However, I would not suggest the sentence to be imposed as did the majority in concluding that "a sentence of more than fifteen years at hard labor without parole, probation or suspension of sentence *1295 in this case would be constitutionally excessive." Rather, I would remand the case to the trial court for resentencing, after which defendant would have the right to appeal if he considered that the new sentence was excessive. Accordingly, I respectfully concur in part and dissent in part.
BLANCHE, Justice (concurring in part, dissenting in part).
I concur in the opinion insofar as it affirms the defendant's conviction and finds the sentence excessive. I dissent from that portion of the opinion which instructs the trial judge that any sentence in excess of fifteen years will be excessive. This writer believes the proper procedure is to simply remand the case for resentencing leaving the trial judge to assess an appropriate sentence taking into account the views expressed in the majority opinion. The judge's discretion ought not be influenced by our opinion as to what sentence would be excessive. This Court will have another chance to review the appropriateness of the sentence after the trial judge, in his discretion, resentences the defendant after compliance with sentencing guidelines.
LEMMON, Justice, concurring.
I concur in the result.
Because some of the facts stated by the trial judge were inappropriate for consideration in sentencing, the apparently severe sentence must be vacated. At the resentencing hearing it will be the function of the trial court to impose the sentence, based on proper considerations and any additional evidence, and it will be the function of the appellate court to review the new sentence and the considerations upon which it is based.

ON APPLICATION FOR REHEARING
PER CURIAM.
Denied. Our original opinion held that defendant's sentence was excessive because "the record evidence and sentencing reasons do not constitutionally support a sentence in excess of fifteen years." State v. Williams, 397 So.2d 1287, at page 1292 (La. 1981). The trial court is not necessarily restricted to the same range of sentence on remand. It may consider additional evidence introduced by the parties in a contradictory hearing and impose a sentence justified by the record as amended.
LEMMON, J., concurs.
NOTES
[1] But see dissenting opinion of Tate, J., 376 So.2d at 105, joined by this author and Calogero, J.
[2] "BY MR. CANNON:

Q. Mr. Gregory, have you formed any opinion about any person who is arrested in connection with Earl Lessley's death?
A. Well I guess I would have to be honest, if I believe what I've read, you know, if what I read is true, in the newspaper.
Q. Of course we want you to be honest and you were about to say whether you had formed an opinion.
* * * * * *
Q. Do you have any opinion as to Rowan Williams in connection with this Earl Lessley matter?
MR. CALDWELL: Your Honor, we would object on the same grounds.
THE COURT: He can ask him whether or not he has an opinion, and the Court will overrule that objection.
MR. CALDWELL: Excuse me. I withdraw my objection.
A. Yeah, I think I have an opinion, based on what I've read and what I've heard, yeah."
[3] The perpetrator of the killing pleaded guilty to the charge of second degree murder and was sentenced to life imprisonment without eligibility for parole for forty years.
[4] American Bar Association Standards for Criminal Justice Relating to Sentencing Alternatives and Procedures, Standard 2.1(d) provides:

It should be recognized that in many instances in this country the prison sentences which are now authorized, and sometimes required, are significantly higher than are needed in the vast majority of cases in order adequately to protect the interests of the public. Sentences of twenty-five years or longer should be reserved for particularly serious offenses or, under the circumstances set forth in sections 2.5(b) and 3.1(c) (special term), for certain particularly dangerous offenders. For most offenses, on the other hand, the maximum authorized prison term ought not to exceed ten years except in unusual cases and normally should not exceed five years.